IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| MARGARITA A. WALSTON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 1:18-CV-517 |
| REBECCA CINTRON, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

After her employment at a University of North Carolina hospital ended, plaintiff Margarita Walston sued the operating room director, defendant Rebecca Cintron, alleging discrimination, retaliation, and violations of state law. Ms. Cintron has moved to dismiss on several grounds. Ms. Walston has not properly served process on Ms. Cintron, leaving the Court without personal jurisdiction over her. The Court will grant the motion to dismiss but will withhold entry of judgment to allow Ms. Walston to seek an extension to obtain proper service and to cure other defects in her pleadings. If she fails to take advantage of this opportunity, judgment will be entered for Ms. Cintron.

**I.   Background**

Ms. Walston filed suit *pro se*, checking boxes on a standard complaint form for employment discrimination cases indicating that she was asserting causes of action under: (*i*) Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq.; (*ii*) the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.; (*iii*) "other federal law,"

which she specified as "retaliation in the workplace; wrongful termination; defamation;" and (*iv*) "relevant state law," which she also specified as "retaliation in the workplace; wrongful termination; defamation." Doc. 2 at 3. Elsewhere in the complaint, she checked boxes indicating that she was discriminated against based on her race, color, national origin, and age, *id.* at 4, and she provided this statement of her claim:

1) Due to my age, color, race, national origin I was let go.
2) Due to whistleblowing, my workload was made difficult by my director.
3) As retaliation, my hours were often cut back and equipments [sic] were withheld.
4) I was given derogatory remarks on background checks by my director causing the job offer rescinded, thereby loss of wages and benefits on my part. (Defamation)
5) This causes me detrimental emotional distress and mental anguish.

*Id.* at 5. She sought compensatory, punitive, and exemplary damages "for continued discrimination, loss of wages and benefits[,] . . . defamation, emotional distress, [and] mental anguish." *Id.* at 6. The complaint contained no other factual allegations.

Ms. Walston named "Rebecca Cintron University of North Carolina Hospital Hillsborough Campus" as the defendant. *Id.* at 1. She did not specify whether she was suing Ms. Cintron in her individual or official capacity.

The Court construes the complaint to assert state law defamation and negligent infliction of emotional distress claims against Ms. Cintron individually and to assert a state law claim for wrongful discharge in violation of public policy and federal Title VII and ADEA claims against Ms. Cintron in her official capacity. *See Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 540 (4th Cir. 2017) ("[C]ourts are obligated to liberally construe

2

pro se complaints, however inartfully pleaded.");[1] *see also Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180–181 (4th Cir. 1998) (noting Title VII and the ADEA only permit liability for the "employing entity," not for supervisors in their individual capacity). Ms. Cintron has moved to dismiss for lack of personal jurisdiction and subject matter jurisdiction, sovereign immunity, and failure to state a claim on which relief may be granted. Docs. 14, 15.

## II. Analysis

### a. Personal Jurisdiction

The summons and complaint were delivered by certified mail directed to Ms. Cintron at her place of work at UNC Hospitals Hillsborough Campus. Doc. 19-1 at 13–14. The return receipt shows that the documents were received by someone named "Shannon," whose last name is illegible. *Id.* at 14.

Plaintiffs can serve process on individuals in several ways, but not through the method used by Ms. Walston—delivery by mail to the defendant's place of work to someone other than the defendant or the defendant's agent for receiving process. *See* Fed. R. Civ. P. 4(e) (listing the methods for serving an individual, which include service under the methods provided by state law in the forum state); N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(a)-(e) (outlining the individual service methods in North Carolina); *see also Davis v. Close*, 1:13-CV-779, 2014 U.S. Dist. LEXIS 185400, at *3 (M.D.N.C. Mar. 17, 2014)

---

[1] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

3

("Neither federal nor state law authorize serving an individual by leaving a copy of the summons and complaint at the individual's place of employment.").

Nor has Ms. Walston properly served Ms. Cintron in her capacity as an official of UNC Hospitals Hillsborough Campus, a state agency. *See* N.C. Gen. Stat. § 116-37(a)(1), (3). The Federal Rules of Civil Procedure are silent on the method of serving a state officer in her official capacity, and courts differ as to whether such service must comply with the rules governing individual service or those governing service of state agencies. *Rogers v. Henderson*, No. 1:14CV461, 2015 WL 2194477, at *2 (M.D.N.C. May 11, 2015) (collecting cases). As discussed *supra*, Ms. Walston has not properly served Ms. Cintron in her individual capacity, nor has she obtained service on UNC Hospitals as a state agency.

Federal Rule of Civil Procedure 4(j)(2) allows service on a state entity through service on its chief executive officer, and there is no evidence that Ms. Cintron or "Shannon" is CEO of UNC Hospitals or its governing entity, UNC Health Care System. N.C. Gen. Stat. § 116-37(a)(3). Rule 4(j)(2) also allows service through the methods provided by state law, which, as relevant here, requires service on the process agent appointed by the agency. N.C. Gen. Stat. § 1A-1, Rule 4(j)(4)(a). By affidavit, Ms. Cintron affirms she has not been designated a process agent for UNC Hospitals or UNC Health Care System, Doc. 15-1 at ¶ 2, and there is no evidence that "Shannon" is a designated process agent.

Service was thus inadequate as to Ms. Cintron in her individual and official capacities and UNC Hospitals as a state entity, and the Court is without personal

4

jurisdiction over the defendant in any capacity. *See Fed. Deposit Ins. Corp. v. Schaffer*, 731 F.2d 1134, 1135–36 (4th Cir. 1984) ("Absent effective service of process, a court is without jurisdiction to render a personal judgment against a defendant.").

While dismissal is proper when service is insufficient, *see*, *e.g.*, *Maybin v. Northside Corr. Ctr.*, 891 F.2d 72, 73 (4th Cir. 1989), "dismissal is not always mandated where the necessary parties have received actual notice of a suit and where they have not been prejudiced by the technical defect in service." *McCreary v. Vaughan-Bassett Furniture Co.*, 412 F. Supp. 2d 535, 537 (M.D.N.C. 2005) (citing *Karlsson v. Rabinowitz*, 318 F.2d 666, 668–69 (4th Cir. 1963)). The Court has discretion to dismiss the action or to quash service and allow the plaintiff more time to serve process. *Thomas v. Nelms*, No. 1:09–CV–491, 2013 WL 593419, at *1 (M.D.N.C. Feb. 14, 2013); *see also McCreary*, 412 F. Supp. 2d at 537–39. Where, as here, the efforts of a *pro se* litigant to serve process are technically inadequate but provide actual notice to the defendant,[2] courts generally allow the plaintiff a chance to remedy the defects. *See Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984); *Thomas*, 2013 WL 593419, at *1. If, however, the complaint is subject to dismissal on other grounds, there

---

[2] Ms. Cintron states that she received the summons and complaint in her interoffice mailbox on the same day they were delivered to "Shannon" by the marshal, Doc. 19-1 at 14; Doc. 15-1 at ¶ 4, and UNC Hospitals "was unequivocally put on notice by plaintiff's service of the summonses . . . , a fact which is evidenced by the Attorney General's filing of a motion to dismiss on" its behalf. *See Wright v. N.C. State Univ.*, No. 5:98-CV-644BR3, 1998 WL 937273, at *5 (E.D.N.C. Nov. 18, 1998); Doc. 14 at 2 (defendant's motion to dismiss, indicating the state Attorney General filed the motion on behalf of UNC Hospitals).

is not good cause to give the plaintiff another opportunity to obtain service. *See Davis*, 2014 U.S. Dist. LEXIS 185400, at *4.

Ms. Cintron contends the complaint should also be dismissed for lack of subject matter jurisdiction, sovereign immunity, and failure to state a claim. Doc. 14 at 1; Doc. 15 at 1. If there is no subject matter jurisdiction or if sovereign immunity bars the suit, it would be futile to allow Ms. Walston more time to properly serve process. As explained *infra*, however, Ms. Walston's claims would largely survive these jurisdictional barriers.

**b. Subject Matter Jurisdiction over Title VII and ADEA Claims**

Subject matter jurisdiction is a "threshold matter" courts must address before making any decision on the merits of a case, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998), including dismissing a complaint for failure to state a claim. *Bell v. Hood*, 327 U.S. 678, 682 (1946). Federal courts have subject matter jurisdiction over Title VII and ADEA claims only after the plaintiff has exhausted administrative remedies. *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300–01 (4th Cir. 2009).[3]

Under both statutes, a plaintiff must file a charge of discrimination with the EEOC before federal courts have jurisdiction. *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091, 1092–93 (4th Cir. 1982); *Xiao-Ying Yu v. Schrader*, Civil No. JKB-17-3260, 2018 WL 3122458, at *4 (D. Md. June 26, 2018). Any subsequent lawsuit is limited to "claims stated in the initial charge, those reasonably related to the original complaint, and

---

[3] Title VII and the ADEA have the same basic exhaustion requirements. *See Jones*, 551 F.3d at 300; *Mandengue v. ADT Sec. Sys., Inc*, No. ELH–09–3103, 2012 WL 892621, at *25 (D. Md. Mar. 14, 2012); 42 U.S.C. §§ 2000e-5(b), (f)(1) (Title VII); 29 U.S.C. § 626(d) (ADEA).

those developed by reasonable investigation of the original complaint." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). Title VII or ADEA claims that "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof . . . are procedurally barred." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005). In applying these standards, courts liberally construe EEOC charges because they are typically drafted by laymen, not lawyers. *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988).

In her charge of discrimination, Ms. Walston asserted that she was treated "differently," forced to resign, and prevented from obtaining other employment by Ms. Cintron, which she attributed to race, age, and national origin discrimination and retaliation, in violation of Title VII and the ADEA. Doc. 19-1 at 1. In her federal complaint, she re-asserts each of these claims. Doc. 2 at 3–4. Because these claims were "stated in the initial charge," *Evans*, 80 F.3d at 963, Ms. Walston has exhausted her remedies as to these claims, and the Court has subject matter jurisdiction over them.

In her complaint, Ms. Walston added a claim that she was "let go" due to her color. Doc. 2 at 4–5. She did not check the box next to "color" discrimination in the EEOC charge or mention any facts relevant to color discrimination in the body of the charge. Doc. 19-1 at 1. As to this claim, she has not exhausted her administrative remedies. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132–33 & n.5 (4th Cir. 2002) (holding plaintiff had not exhausted his remedies on a color discrimination claim where he alleged racial discrimination but not color discrimination in his EEOC charge).

### c. Sovereign Immunity

Sovereign immunity is a jurisdictional question that courts should consider "at any time, even *sua sponte*." *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997). Sovereign immunity bars federal jurisdiction over suits against nonconsenting states, state agencies or departments, and cases where those entities are the "real, substantial party in interest," even if not captioned as a party. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984). Congress may abrogate state sovereign immunity through legislation enacted pursuant to its enforcement powers under § 5 of the Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).

As noted in *supra* Section I, Ms. Walston's Title VII and ADEA claims against Ms. Cintron must necessarily proceed as official capacity claims, *Lissau*, 159 F.3d at 180–181, and her employer, UNC Hospitals, is a state agency. *See* N.C. Gen. Stat. § 116-37(a)(1), (3). Ms. Walston seeks compensatory damages and appears to seek punitive damages for violations of Title VII and the ADEA. Doc. 2 at 6. "A suit for damages against individual officers in their official capacities is treated like a suit against the state itself." *Lizzi v. Alexander*, 255 F.3d 128, 136 (4th Cir. 2001), *overruled in part on other grounds by Nev. Dep't. of Human Res. v. Hibbs*, 538 U.S. 721 (2003).

Ms. Cintron contends that any claim for punitive damages under Title VII is barred by sovereign immunity. Doc. 15 at 16–17. As to this limited argument, she is correct.

Congress has abrogated state sovereign immunity for claims under Title VII, *Fitzpatrick*, 427 U.S. at 452–57, but only for those forms of equitable relief allowed

under § 2000e-5(g), such as back pay, as well as compensatory damages, which were added as a form of relief under a 1991 amendment. *See* 42 U.S.C. § 1981a(1); *Okruhlik v. Univ. of Ark. ex rel. May*, 255 F.3d 615, 622–23, 626 (8th Cir. 2001); *Blankenship v. Warren Cty.*, 931 F. Supp. 447, 449–51 (W.D. Va. 1996). Congressional abrogation of state sovereign immunity under Title VII does not extend to claims seeking punitive damages. *See* § 1981a(b)(1); *Okruhlik*, 255 F.3d at 623; *Blankenship*, 931 F. Supp. at 449–51. Because Congress has not abrogated sovereign immunity for punitive damages under Title VII, and the Court finds no indication that North Carolina has consented to such suits, any amended complaint asserting punitive damages under Title VII would be futile.

However, Ms. Cintron has not asserted that any of Ms. Walston's other claims are barred by sovereign immunity. At this point, it does not appear that allowing more time for service would be futile as to those claims. *Cf. Davis*, 2014 U.S. Dist. LEXIS 185400, at *4.

### d. Failure to State a Claim

Ms. Walston's complaint is near totally devoid of factual allegations. She used a standard form for *pro se* complainants, checking boxes for race, color, and national origin discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., and other federal and state claims, which she specified as "retaliation in the workplace; wrongful termination; [and] defamation." Doc. 2 at 3.

Elsewhere in the complaint, she cited "emotional distress; [and] mental anguish," *id.* at 4–6, but it is not clear that Ms. Walston intends to assert a tort claim for intentional or negligent infliction of emotional distress. It is also not clear whether she means to assert a retaliation claim under Title VII, the ADEA, or some other state or federal law, see *id.* at 3–5, 8, nor is it clear that she intends to assert a claim for "wrongful termination" that is separate from her Title VII and ADEA discrimination claims. *See id.* at 3, 8. She does allege she was retaliated against for "whistleblowing," *id.* at 5, which the Court assumes is a state law claim for wrongful discharge in violation of public policy, *see Coman v. Thomas Mfg. Co., Inc.*, 325 N.C. 172, 381 S.E.2d 445 (1989), though possibly she may mean to assert unspecified statutory claims.

In the section of the complaint for "the facts of my case," Doc. 2 at 4–5, Ms. Walston makes only the limited factual assertions as set forth in *supra* Section I. She does not state what her job was at the hospital; she does not provide dates for when she was hired, terminated, or prevented from obtaining employment; she does not explain what role Ms. Cintron played in her termination; she does not disclose what actions she took that were protected activity under federal law or how Ms. Cintron retaliated against her for engaging in those activities; she does not identify any defamatory statements made by Ms. Cintron; and she does not specify any conduct that would indicate she was discriminated against because of her age, race, or national origin.

Although the Court must liberally construe a *pro se* complaint, the plaintiff must do more than make conclusory allegations to survive a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007). Ms. Walston's complaint does not contain enough facts to survive a Rule 12(b)(6) motion.

In response to Ms. Cintron's motion to dismiss, however, Ms. Walston filed a brief and several documents fleshing out her factual allegations. Docs. 19, 19-1. She asserts she was a nurse at UNC Hospitals, but was forced to resign and prevented from obtaining employment at another branch of the hospital by her supervisor, Ms. Cintron. Doc. 19 at 4, 18–20. She alleges she is 59 years old, is racially "Asian," and is from the Philippines, *id.* at 20, and she includes facts detailing disparate treatment at the hands of Ms. Cintron, *id.* at 11–17, and tending to show that Ms. Cintron treated different age, national origin, and racial groups differently.[4] She asserts Ms. Cintron retaliated against her in various ways after she reported medical misconduct by an anesthetist at the hospital who was friends with Ms. Cintron. *Id.* at 7–11, 19. These allegations provide at least some arguable factual support for one or more of Ms. Walston's claims.

Ordinarily, courts allow *pro se* plaintiffs leave to amend for technical pleading problems so long as it would not be futile to do so. *See Gordon v. Leeke*, 574 F.2d 1147, 1152 (4th Cir. 1978) ("What might be a meritorious claim on the part of a pro se litigant unversed in the law should not be defeated without affording the pleader a reasonable

---

[4] For example, she describes Ms. Cintron's reactions to her accent and asserts that she fired an African-American nurse after forcing Ms. Walston to resign, Doc. 19 at 5–6; she maintains that Ms. Cintron refused to discipline a white employee who had thrown a bloody sponge at Ms. Walston and instead gave Ms. Walston the "cold shoulder," *id.* at 18; and she claims that Ms. Cintron "kept asking me how old I was" and that she replaced her with two "young graduates" after firing her. *Id.* at 5, 16. Ms. Walston also asserts that she received positive performance reviews from all those around her, *id.* at 15, 17; Doc. 19-1 at 24–27, but was nonetheless singled out by Ms. Cintron for heightened scrutiny, reprimand, and mistreatment. Doc. 19 at 11–17.

11

opportunity to articulate his cause of action."). While it is not completely clear that Ms. Walston can state a claim with her latest allegations, it is arguably possible.

Because most of Ms. Walston's claims are not barred by failure to exhaust administrative remedies or sovereign immunity, and because she may be able to state a claim for relief, the Court will withhold entry of judgment to give Ms. Walston time to seek leave of court to file an amended complaint and to extend the time allotted for proper service of process under Rule 4(m) of the Federal Rules of Civil Procedure.

## III. Conclusion

The Court has subject matter jurisdiction over all but Ms. Walston's Title VII claim for color discrimination, and sovereign immunity only appears to bar her request for punitive damages under Title VII. However, Ms. Walston has not properly served process on Ms. Cintron in her individual or official capacity, and the Court is without personal jurisdiction over the defendant in any capacity.

Because service of process afforded actual notice to Ms. Cintron and UNC Hospitals, and because Ms. Walston's briefing includes additional allegations that provide possible support for one or more of her causes of action, the Court will grant Ms. Cintron's motion to dismiss but will withhold entry of judgment to allow Ms. Walston to seek an extension of time to properly serve Ms. Cintron, *see* Federal Rule of Civil Procedure 4(m), and to amend her complaint to include facts sufficient to state a claim.

Any motion to amend the complaint must attach a proposed amended complaint as required by Local Rule 15.1. *See also* Fed. R. Civ. P. 15(a)(2). The proposed amended complaint should not contain a Title VII claim for color discrimination or for punitive

damages.  It must specify each claim she intends to assert, and for each claim, state whether it is asserted against Ms. Cintron in her individual or official capacity.  It must also contain sufficient facts to plausibly assert a right to relief for each claim.

To date, Ms. Walston has made little to no effort to comply with the Local Rules or the Federal Rules of Civil Procedure, instead pleading her lack of understanding of the law.  *See, e.g.*, Doc. 19 at 1.  Though *pro se* plaintiffs are entitled to a degree of deference, they must follow the same rules as represented parties, *see United States v. Beckton*, 740 F.3d 303, 306 n.* (4th Cir. 2014); *Crisp v. Allied Interstate Collection Agency*, 149 F. Supp. 3d 589, 592 n.4 (M.D.N.C. 2016), and the Court cannot and will not do Ms. Walston's work for her.  *See Gordon*, 574 F.2d at 1151 (noting the Fourth Circuit does not "expect[] the district courts to assume the role of advocate for the pro se plaintiff").

Given her *pro se* status, however, the Court will allow Ms. Walston another opportunity, likely the final opportunity, to obtain service and file a complaint that states a claim.  If she does not file a motion for an extension of time to serve the summons and complaint and a motion to file an amended complaint by January 11, 2019, the Court will enter judgment in favor of the defendant without further notice to the plaintiff.  If Ms. Walston's filings show a continued unwillingness or inability to follow the Local Rules and the Federal Rules of Civil Procedure or do not set forth facts sufficient to plausibly assert a cause of action, judgment will be entered without further notice to the plaintiff.

It is **ORDERED** that the defendant's motion to dismiss, Doc. 14, is **GRANTED** and that service of process on defendant Rebecca Cintron is **QUASHED**.  On or before

January 11, 2019, plaintiff Margarita Walston may file a motion to extend the time limit to serve process and a separate motion to amend her complaint with an attached proposed amended complaint which corrects the deficiencies noted in this Order. Judgment is withheld pending such motions and will be entered in the absence of adequate motions timely filed as allowed by this Order.

    This the 18th day of December, 2018.

                                                                                           UNITED STATES DISTRICT JUDGE